**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ROBERT JOHN WOLFF,**

                                    **Plaintiff,**

          *- against -*

**TOWN OF MT. PLEASANT, CHAPPAQUA**
**CENTRAL SCHOOL DISTRICT LIBRARY, and**
**WESTCHESTER COUNTY DEPARTMENT OF**
**HUMAN RESOURCES[1],**

                              **Defendant.**

**06 Civ. 3864 (CS) (LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO:   THE HONORABLE CATHY SEIBEL,**
**        UNITED STATES DISTRICT JUDGE**

Defendant Town of Mt. Pleasant (hereinafter, "Defendant" or "Town") has filed a motion

for summary judgment in the above-captioned matter initiated by Plaintiff Robert Wolff

(hereinafter, "Plaintiff" or "Wolff") pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e – 2000e-17 (hereinafter, "Title VII"), and the Age Discrimination in

Employment Act, 29 U.S.C. §621, *et seq.*(hereinafter, "ADEA").  Docket #83, Defendant's

Motion for Summary Judgment; Def. Ex. A, Third Amended Complaint.  Plaintiff has asserted

that Defendant refused to hire him for a full-time Laborer position because of his age and that

Defendant retaliated against him for filing an age discrimination complaint with the New York

State Division of Human Rights and the Equal Employment Opportunity Commission.  Ex. A at

¶¶C4, 7, 9.  In its motion for summary judgment, Defendant asserts that Plaintiff has failed to

establish a genuine issue of material fact and, therefore, Plaintiff's complaint should be

_____

        [1]Chappaqua Central School District Library and the Westchester County Department of
Human Resources have both been dismissed from this action.  See Docket # 70 and 82.

dismissed.  Defendant's Memorandum of Law (hereinafter, "Def's Mem."), Docket #84.   For

the following reasons, I conclude, and respectfully recommend that Your Honor should

conclude, that the Defendant's motion for summary judgment should be granted and Plaintiff's

complaint should be dismissed in its entirety.

## I.      BACKGROUND

A.     Facts

        The following basic facts are drawn from the parties' respective 56.1 Statements of

Undisputed Material Facts, exhibits submitted by Defendant in support of its submission,

Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment, and Plaintiff's

exhibits submitted in support of his submission.  See Docket #85, Defendant's 56.1 Statement

(hereinafter, "Def's 56.1 Statement"); Docket #89, Plaintiff's 56.1 Response (hereinafter, "Pl's

56.1 Response"); Def's Exs A-AA; Docket #90, Plaintiff's Affidavit in Opposition to

Defendant's Motion for Summary Judgment (hereinafter "Pl's Aff."); and Plaintiff's Exhibits

(hereinafter, "Pl's Exs. 1-59").   Plaintiff cites no supporting documentation to establish the facts

behind the many denials in his 56.1 Response, even though Plaintiff was provided with a copy of

Local Rule 56.2 Statement which includes a copy of Local Rule 56.1 and its requirement of both

parties to cite to evidence in their 56.1 Statements.   Docket #86, Notice to *Pro Se* Litigant; Local

Rule 56.1(d)("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b),

including each statement controverting any statement of material fact, must be followed by

citation to evidence which would be admissible, set forth as required by Federal Rule of Civil

Procedure 56(e)").   In light of this Court's "broad discretion" to determine the effect of

noncompliance with the Local Rules, Holtz v. Rockefeller Co., 258 F.3d 62, 73 (2d Cir. 2001),

and because the Defendant's Rule 56.1 Statement is replete with citations to admissible

2

evidence, the facts asserted in the Defendant's Rule 56.1 Statement should be assumed to be true for the purposes of this motion, save for the factual disputes the Plaintiff interjects, and supports with citations to evidence, in his Affidavit in Opposition to Defendant's Motion for Summary Judgment. See infra at pp. 7-9 (discussing summary judgment standard and compliance with the Local Rules).[2]

Plaintiff Robert Wolff was first hired by the Mt. Pleasant Water Department (hereinafter, "Water Department") as a seasonal employee on June 14, 2004, when he was 51 years old. Def's 56.1 Statement at ¶¶21, 22.  At that time, four Water Department employees were out of work due to either Worker's Compensation, disability, or personal leave.  Def's 56.1 Statement at ¶25.  Because of this shortage of staff, seasonal employees, such as Plaintiff, were used to perform tasks regularly performed by full-time, permanent staff members, including reading meters and tending to water leaks.  Def's 56.1 Statement at ¶¶29, 30.  Plaintiff's first seasonal employment was extended an additional six weeks.  Def's 56.1 Statement at ¶31.

The Water Department owns trucks that require that the driver possess a Commercial Driver's License (hereinafter, "CDL") in order to operate them.  Def's 56.1 Statement at ¶6.   In October, 2004, the Water Department advertised for the position of full-time Laborer.  Def's 56.1 Statement at ¶40.  The advertisement stated that applicants were required to have a CDL license, in keeping with the Water Department's newly instituted policy of requiring CDL licenses of all newly hired Laborers.  Def's 56.1 Statement at ¶¶39, 41.  Plaintiff disputes that this policy was in effect at the time of the posting of the position, even though Plaintiff agrees

---

[2]Where Plaintiff has agreed with Defendant's 56.1 statements, only the Def's 56.1 Statement will be cited.  Where Plaintiff has disagreed with Defendant's statements, yet submitted no documentation to support his denial, both Defendant's 56.1 statement and Plaintiff's statements from his Affidavit will be cited.

that the advertisement noticed that a CDL was required.  Pl's 56.1 Response at ¶¶39, 41.

Plaintiff was informed by Supervisor Meehan that the position required a CDL license.  Def's

56.1 Statement at ¶48; Ex. C at 85.[3]  Plaintiff was also informed by Harvey Glass, Assistant

Superintendent of the Water Department, that the position required a CDL.  Def's 56.1

Statement at ¶56; Ex. C at 110.  At the time the Laborer position was advertised and Plaintiff

was interviewed for this position, Plaintiff did not possess a CDL.  Def's 56.1 Statement at ¶58;

Ex. W.  Plaintiff did not obtain his CDL license until January 18, 2008.  Def's 56.1 Statement at

¶62; Ex. W.

During the time between the posting of the Laborer position in October, 2004, and

Plaintiff obtaining his CDL license in January, 2008, the Water Department hired six men for

full-time Laborer positions, all of whom possessed a CDL.  Def's 56.1 Statement at  ¶¶96-123;

Ex. O; Ex. C at 236-37.  The newly hired Laborers ranged in age from 25 years old to 42 years

old.  Def's 56.1 Statement at ¶¶96-123.  All of the newly hired Laborers had either Highway

Department, general Laborer, or Water Department experience.  Exs. P, Q, R, S, X and Z.  The

Water Department has not hired any full-time Laborers since August 20, 2007, nearly four

months before Plaintiff obtained his CDL.  Def's 56.1 Statement at ¶67; Guena Aff. at ¶27, 28.

_____

[3]In his 56.1 Response, Plaintiff disputes that he was told by Supervisor Meehan of the
CDL requirement.  Pl's 56.1 Response at ¶48.  However, Plaintiff testified during his deposition
that he did recall Supervisor Meehan telling him of this requirement during their meeting.  Ex. C
at 85.  "[A] party may not create an issue of fact by submitting an affidavit in opposition to a
summary judgment motion that, by omission or addition, contradicts the affiant's previous
deposition testimony."  Hayes v. New York City Department of Corrections, 84 F.3d 614, 619
(2d Cir. 1996)(citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d
Cir.1969).  "Thus, factual issues created solely by an affidavit crafted to oppose a summary
judgment motion are not 'genuine' issues for trial."  Id.  For the purposes of this section, where
Plaintiff contradicts his own testimony in his 56.1 Response, this Court will cite the Defendant's
56.1 Statement and the deposition testimony (Ex. C) that supports it.

On January 26, 2005, Plaintiff was again hired as a seasonal employee by the Water Department.  Def's 56.1 Statement at ¶79.  On March 30, 2005, Plaintiff filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission.  Def's 56.1 Statement at ¶125.  After discussions with his supervisors regarding further employment with the Water Department, Plaintiff was appointed to the position of part-time Laborer.  Def's 56.1 Statement at ¶¶81, 87.  In March of 2007, Plaintiff received a 20% raise in pay, from ten dollars an hour to twelve dollars an hour.  Def's 56.1 Statement at ¶156.

In his position as a part-time laborer, Plaintiff is assigned duties by his supervisor on an as needed basis based upon the needs of the Town and Plaintiff's experience and qualifications.  Def's 56.1 Statement at  ¶¶135, 136; Ex. C at 42-43, 229.  Plaintiff generally works alone.  Def's 56.1 Statement at ¶141.  Plaintiff has accrued the following: 78 unpaid absences and 33 partial work days in 2007; 40 unpaid absences and 29 partial work days in 2008; 65 unpaid absences and 38 partial work days in 2009; and 30 unpaid absences and 34 partial work days thus far in 2010.  Def's 56.1 Statement at  ¶¶154-61; Ex. D.  Defendant claims that it is the policy of the Water Department to issue lockers only to full-time employees.  Def's 56.1 Statement at ¶148; Guena Aff. at ¶25.  Plaintiff disputes that such a policy exists.  Pl's Aff. at 112.

B.     Procedural History

Plaintiff commenced the instant suit against the Defendant on May 22, 2006, in the United States District Court for the Southern District of New York.  Docket #2, Complaint.  Defendant answered on August 7, 2006.  Docket #5, Answer.  On December 7, 2007, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, adding the Chappaqua Central School District Library as a Defendant and asserting additional claims of retaliation against Defendant Town of Mt. Pleasant.  Docket #25, Motion.  This motion was granted and Plaintiff

filed his Second Amended Complaint on March 13, 2008.  Docket #33, Decision and Order, and #34, Second Amended Complaint.  Defendant Chappaqua Library answered the Second Amended Complaint on June 23, 2008.  Docket #44, Answer.  The Court then granted Plaintiff's motion to file a Third Amended Complaint adding the Westchester County Department of Human Resources as an additional Defendant and such a Complaint was filed by Plaintiff on October 15, 2008.  Docket #53, Minute Entry, and Docket #54, Third Amended Complaint.

On January 7, 2009, the Westchester County Department of Human Resources filed a Motion to Dismiss and Plaintiff answered on February 20, 2009.  Docket #60, Notice of Motion, and #66, Affirmation.  The undersigned issued a Report and Recommendation that the Motion to Dismiss be granted and Your Honor adopted that recommendation on May 26, 2009.  Docket #69, Report and Recommendation, and #70, Order Adopting Report and Recommendation.  On January 4, 2010, Plaintiff and Defendant Chappaqua Library entered into a voluntary stipulation that dismissed Defendant Chappaqua Library from the case.  Docket #82, Stipulation of Partial Dismissal.  On May 3, 2010, the only remaining Defendant, the Town of Mt. Pleasant, filed the instant Motion for Summary Judgment and Plaintiff filed his opposition on July 14, 2010.  Docket #83, Motion for Summary Judgment, and #89, Plaintiff's Response.  Additionally, Defendant filed a Reply brief on August 2, 2010.  Docket #91, Reply Memorandum.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has not shown that there exists a genuine issue of material fact warranting the continuation of this matter.  Therefore, Defendant's Motion for Summary Judgment should be granted as a matter of law and Plaintiff's Complaint should be dismissed in its entirety.

**II.**     **DISCUSSION**

A.     Summary Judgment Standard and Local Rule 56.1

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).  A fact is "material" when it may affect

the outcome of a case under the governing substantive law.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  Id.  A trial judge may,

therefore, grant summary judgment only if there is no genuine issue as to any material fact and if

the moving party is entitled to judgment as a matter of law.  Id. at 250.  The inquiry performed is

the threshold inquiry of determining whether there are any genuine factual issues that properly

can be resolved only by a finder of fact.  Id.

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has

failed to make a sufficient showing on an essential element of [its] case with respect to which [it]

has the burden of proof.' "  Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting

Celotex, 477 U.S. at 323) (alteration in original).  "The nonmoving party must have 'had the

opportunity to discover information that is essential to his [or her] opposition' to the motion for

summary judgment."  Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d

Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5).  Moreover, a court should "constru[e] the

evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences

in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002);

Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit

Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2.  Thus, "[o]nly

when no reasonable trier of fact could find in favor of the nonmoving party should summary

judgment be granted."  Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting

H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir.

1989)).

Pursuant to the Local Rules for the Southern and Eastern Districts of New York, a

moving party must attach a "separate, short and concise statement, in numbered paragraphs, of

the material facts as to which the moving party contends there is no genuine issue to be tried."

See Local Rule 56.1(a).  A similar requirement is imposed upon the party opposing the motion

for summary judgment.  See Local Rule 56.1(b) (requiring the party opposing a motion for

summary judgment to identify the material facts which it contends are in dispute).  Should the

non-moving party fail to respond to the facts alleged by the moving party to be undisputed, those

facts "will be deemed to be admitted for purposes of the motion . . . ."  Local Rule 56.1(c).

Importantly, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b),

including each statement controverting any statement of material fact, must be followed by

citation to evidence which would be admissible, set forth as required by Federal Rule of Civil

Procedure 56(e)."  See Local Rule 56.1(d).  This requirement "free[s] district courts from the

need to hunt through voluminous records without guidance from the parties."  Holtz v.

Rockefeller Co., 258 F.3d 62, 74 (2d Cir. 2001) (citations omitted).

Thus, as a general rule, the Court may accept as true the material facts asserted by the

moving party in an unopposed Rule 56.1 statement.  See Gubitosi v. Kapica, 154 F.3d 30, 31 n.2

8

(2d Cir. 1998).  The Second Circuit has cautioned, however, that the opposing party's failure to comply with the local rules does not absolve the moving party from meeting its own burden of proof in its motion for summary judgment.  See Holtz, 258 F.3d at 72-74.  The Holtz court also noted that a district court has "broad discretion" to determine whether to overlook noncompliance with the local rules.  Id. at 73.  Synthesizing the spirit of the Local Rules, and the Holtz court's decision, failure to respond to a moving party's Rule 56.1 Statement may mean that the uncontested facts contained therein will be assumed to be true for the purposes of the motion if such facts are properly supported by citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).  As explained supra, because the Plaintiff has not supported his objections to Defendant's 56.1 Statement with documentation, noting simply that he denies certain of them and giving his own reasoning as to why; and because the Defendant's submission contains citations to admissible evidence, the Defendant's 56.1 Statement should be adopted by the Court for the purposes of this motion, save for the factual disputes the Plaintiff interjects in his affidavit in opposition.[4]

B.      Plaintiff's Causes of Action[5]

       1.      Unlawful Termination Based Upon Plaintiff's Age

---

[4]It should be noted that Plaintiff has not submitted a Memorandum of Law, only his affidavit in opposition.

[5]Plaintiff makes a considerable number of accusations and assertions in his Affirmation in Opposition to Defendant's Motion for Summary Judgment, i.e. that the Town violated Civil Service Law in their certification of his position as part-time Laborer; that the Town violated Civil Service Law when they required him to work 40 hours a week in his position as part-time Laborer; that he was subjected to a hostile work environment, and that the Town promised to create the position of Water Meter Reader for him and then never did so.  These allegations are not relevant to Plaintiff's age discrimination or retaliation claims and, therefore, will not be addressed in this Report and Recommendation.

Plaintiff alleges in his Complaint that Defendant refused to hire him for a full-time Laborer position because of his age.  Ex. A at ¶7.  Defendant maintains that Plaintiff was unqualified for the position of full-time Laborer and, additionally, that the Town of Mt. Pleasant had legitimate, nondiscriminatory reasons for its hiring decisions.  Def's Mem. at 6-12.

Section 623(a) of U.S.C. 29 ("Age Discrimination in Employment Act" or "ADEA") reads as follows:

> It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

While the Act goes on to enumerate exceptions to this general prohibition (i.e. retirement plans, law enforcement, firefighter), none of them are relevant to the instant case.  The ADEA applies only to those persons who are at least 40 years old.  29 U.S.C. § 631(a).

ADEA claims are analyzed under the same burden shifting analysis as claims brought pursuant to Title VII.  See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  "To establish a prima facie case of age discrimination under the ADEA, a claimant must demonstrate that: 1) he [or she] was within the protected age group; 2) he [or she] was qualified for the position; 3) he [or she] was subject to an adverse employment action; and 4) the adverse action occurred under 'circumstances giving rise to an inference of discrimination.' " Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)(quoting Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir.2001)).  If the plaintiff is able to make a prima facie case of age discrimination under such analysis, the burden then shifts to the employer "to offer a legitimate, nondiscriminatory business rationale for its actions." Schnabel, 232 F.3d at 87.  "The burden on the defendant at this phase is one of production, not persuasion."

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142 (2000).  If the employer can
assert such a business rational for its decisions, then the burden shifts back again to the plaintiff
to prove that "age was the real reason for his discharge."  <u>Schnabel</u>, 232 F.3d at 87.  "[T]he
plaintiff cannot meet this burden through reliance on unsupported assertions."  <u>Goenaga v.
March of Dimes Birth Defects Foundation</u>, 51 F.3d 14 (2d Cir. 1995).  Although under this
framework, the burden shifts back and forth, "[t]he ultimate burden of persuading the trier of fact
that the defendant intentionally discriminated against the plaintiff remains at all times with the
plaintiff."  <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

       Although Plaintiff satisfies the first prong of the analysis – he is within the protected age
group because, at the time of the alleged discrimination, Plaintiff was 52 years old – Plaintiff has
not satisfied the second prong; namely, that he was qualified for the position.  Defendant,
according to the affidavit of Robert Guena, Superintendent of the Water Department, instituted a
policy in October, 2004, of requiring all newly hired Laborers to possess a CDL.  Guena Aff. at
15.  This requirement was specifically noted in the advertisement that Defendant posted for the
Laborer position.  Ex. H.  Additionally, Plaintiff was informed of this requirement by both
Supervisor Robert Meehan and Assistant Superintendent of the Water Department, Harvey
Glass.  Ex. C at 85, 110.  At the time of the first hiring in January, 2005, and also during the time
of any subsequent hiring of Laborers through 2007, which was the last hiring in the Water
Department, Plaintiff admittedly did not possess a CDL.  Ex. C at 137; Ex. W.  Thus, Plaintiff
was not qualified for this position.

       Plaintiff disputes that this policy existed prior to or during the time of hiring for the
Laborer position.  Pl's 56.1 Response at ¶39.  Plaintiff's objection to this argument is based on
his assertion that he has "never seen any Town Board Motion or departmental memo regarding

such" a policy requiring CDL licenses of newly hired Laborers.  Id.   Plaintiff is in error in his

understanding that any such motion or memo is necessary for the institution of such a

requirement.  Although both parties submitted the Town of Mt. Pleasant's job specifications for

the position of Laborer – which noticeably does not contain a requirement of a CDL for

employment as a Laborer – the official job specifications and qualifications for a classified

position under New York State Civil Service Law are set by the local Civil Service Commission

which, in this case, is the Westchester County Department of Human Resources.  New York

Civil Service Law, Section 22("Any such new position shall be created or any such existing

position reclassified only with the title approved and certified by the commission"); Westchester

County Civil Service Rules, Section 23.1("The Commissioner of Human Resources shall cause

to be prepared and maintained in a place easily accessible to the public during business hours,

detailed specifications for each title.  No person shall be employed or appointed under any title

not appropriate to the duties to be performed").

The description of Laborer, according to the Westchester County Department of Human

Resources, contains the following language: "Special Requirement: If applicable, possession of

valid license to operate a motor vehicle in New York State, appropriate to the vehicle to be

operated."[6]  Accessed at www.westchestergov.com/hr/jobspecs/ljs/local/L/laborer.pdf.  This

allows the hiring authority to require any special licenses, "if applicable."  Since it has been

established that the Water Department owns vehicles that require a CDL, then it is applicable to

require such a license of anyone hired for the position of Laborer and they are within their legal

right to do so.

---

[6]The correct description of the job of Laborer from the Westchester County Department
of Human Resources is annexed to this report as Appendix A.

Were Plaintiff able to overcome this shortcoming and somehow make out a prima facie case of age discrimination, the burden would then shift to Defendant to prove a legitimate, nondiscriminatory business rationale for passing over Plaintiff in favor of another applicant. The decision to hire those who already possessed a CDL over Plaintiff, who did not, was a legitimate, nondiscriminatory business decision. The Water Department owns trucks that require the driver to possess a CDL in order to operate them. Guena Aff. at ¶5. The Water Department had, in the past, attempted to induce employees of the Water Department to get their CDL's without success. Guena Aff. at ¶12, 13. Consequently, the Department was often shorthanded with regard to employees who could operate these vehicles. Guena Aff. at ¶13. In light of this situation, it was a logical, business decision to hire employees who already had this type of license and would be able to operate these vehicles legally immediately upon hiring over those applicants who did not possess such a license. Additionally, all of the applicants that were hired in Plaintiff's stead between 2004 and 2007 had similar or better qualifications and experience than Plaintiff. Exs. P, Q, R, S, X and Z.[7] This explanation satisfies Defendant's burden and shifts the burden back to Plaintiff to prove that "age was the real reason for his discharge." Schnabel, 232 F.3d at 87.

Plaintiff offers little evidence to support his claim that age was the reason he was not

---

[7]Plaintiff questions the experience of the last of these hires, Francisco Oliveri, noting that Oliveri's previous employment applications with the Town do not list his three years experience with the Mt. Kisco Water Department. Pl. Aff. at ¶117. Oliveri's resume was submitted by Defendant and lists this previous employment. Ex. Z. Furthermore, Oliveri possessed a valid CDL when he was hired by Defendant. Ex. 0; Guena Aff. at ¶27. Plaintiff contends that "Mr. Oliveri's principle employment attribute would appear to be his youth." Id. Plaintiff has submitted no evidence to support his implication that Oliveri was not as qualified as he and that, therefore, Oliveri must have been hired simply because he is younger than Plaintiff. Thus, this assertion has no merit.

hired as a full-time Laborer.  To this end, Plaintiff asserts that Greg Wind, who was the Foreman at the Water Department at the time, told Plaintiff that Assistant Superintendent Harvey Glass wanted to get some "young blood" in the department.  Pl's Aff. at  ¶54; Ex. C at 120.  Plaintiff does not provide a sworn affidavit from Wind attesting to this statement; thus, this assertion is hearsay and is not admissible as evidence.  Furthermore, Plaintiff claims that Superintendent Guena suggested that Plaintiff "look for something less strenuous."  Pl's Aff. at ¶55; Ex. C at 128; Pl's Ex. 23.  Plaintiff had previously complained to Guena about his difficulty climbing in and out of the Water Department trucks, particularly Truck 18.  Guena Aff. at ¶16; Ex. C at 40, 129; Pl's Aff. at ¶58.  In Plaintiff's affidavit, he admits that he asked Guena's advice on what he should do to obtain full-time employment with the Town.  Pl's Aff. at ¶55.  Plaintiff, then, followed this advice and emailed Supervisor Meehan, requesting that he keep him in mind for a position in the Town that "might be less 'strenuous' (to use Bob Guena's word) and perhaps would make better use of [Plaintiff's] Jesuit education and verbal dexterity."  Pl's Ex. 23.

Additionally, Plaintiff asserts that a Maintenance Worker colleague at the Water Department yelled, "Let the old faggot get a desk job" and directed the comment towards Plaintiff.  Pl's Aff. at ¶69.  Even if this comment was illustrative of discriminatory intent in hiring, the person who uttered this comment was, by Plaintiff's own admission, not a decision maker with regard to hiring.  Pl's Aff. at ¶61.  Finally, Plaintiff asserts that Defendant only provided Plaintiff with four hours of training on Water Department trucks for his CDL while Defendant provided more time for a similarly situated co-worker.  Ex. A at ¶8G; Pl's Aff. at ¶96.  Plaintiff has submitted no evidence beyond his own statements that 1) it was a "routine departmental practice" to train employees on Water Department trucks and 2) other employees were provided with more time to do so.  Id.  Plaintiff admits that he was afforded four hours to

14

train on the Water Department trucks and that, subsequently, he passed the CDL test on his first

attempt.  Def's 56.1 Statement at ¶147; Pl's 56.1 Response at ¶147; Ex. C at 94-95; Pl's Aff. at

¶96.  Thus, Plaintiff has provided no evidence to prove that age, and not lack of a CDL, was the

real reason for Defendant's decision not to hire Plaintiff for the full-time Laborer position.

Because Plaintiff, as the nonmoving party, "has failed to make a sufficient showing on an

essential element of [his] case with respect to which [he] has the burden of proof," namely that

Plaintiff was qualified for the position or that age was the real reason for Defendant's hiring

decisions, Defendant is entitled to judgment as a matter of law.  Celotex, 477 U.S. at 323.

Therefore, I conclude, and I respectfully recommend that Your Honor should conclude, that

Defendant's Motion for Summary Judgment, in relation to Plaintiff's claim of age discrimination

under the ADEA,  should be granted, and that part of Plaintiff's complaint should be dismissed.

2.      Plaintiff's Retaliation Claim

In his Complaint, Plaintiff alleges various forms of retaliation committed against him by

his employer, Defendant Town of Mt. Pleasant.  Ex. A at ¶8F, G.  These include: failure to

assign Plaintiff daily duties, exclusion from working overtime, exclusion from working with

others, and failure to provide a locker.  Id.  Defendant asserts that Plaintiff's allegations either do

not rise to the level of an adverse employment action, are temporally deficient, or that Defendant

had legitimate, non-retaliatory reasons for its actions.  Def's Mem. at 12-18.

In order to establish a prima facie claim of retaliation in violation of Title VII, the

Plaintiff must establish: "(1) [his or her] participation in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal

connection between the protected activity and the adverse employment action."  Jute v. Hamilton

Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).  Should a complainant establish these prima

15

facie elements, pursuant to <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the burden

of proof then shifts to the defendant-employer to articulate a legitimate, non-retaliatory reason

for taking the adverse employment action against the plaintiff.  <u>See</u> <u>Jute</u>, 420 F.3d at 173.

An employee's filing of a discrimination charge with an external agency is a protected

activity.  <u>U.S. v. New York Transit Authority</u>, 97 F.3d 672, 677 (2d Cir. 1996) (quoting 42

U.S.C. § 20003-3(a)).  In the present case, it is undisputed that Plaintiff filed a discrimination

charge with the EEOC and that the Defendant knew that he was in communication with the

EEOC regarding these charges.  The first prong is therefore satisfied, and the second prong –

whether Plaintiff suffered an adverse employment action – is at issue for this Court.

A plaintiff suffers an adverse employment action if he or she experiences a " 'materially

adverse change' in the terms and conditions of employment."  <u>Galabya v. New York City Board</u>

<u>of Education</u>, 202 F.3d 636, 640 (2d Cir. 2000) (citing <u>Richardson v. New York State</u>

<u>Department of Correctional Services</u>, 180 F.3d at 426, 446 (2d Cir. 1999)).  A change in working

conditions must be "more disruptive than a mere inconvenience or an alteration of job

responsibilities" to be considered "materially adverse."  <u>Galabya</u>, 202 F.3d at 640 (internal

quotations and citations omitted).

Under Title VII, an adverse employment action is not solely defined in terms of job

termination, demotion, or loss of benefits.  <u>Wannamaker v. Columbian Rope Co.</u>, 108 F.3d 462,

466 (2d Cir. 1997).  Although less serious reprisals may be considered adverse for purposes of

stating a retaliation claim, "not every unpleasant matter short of [discharge or demotion] creates

a cause of action for retaliatory discharge." <u>Id.</u>(internal quotations and citations omitted)

(alteration in original).  The following are possible indications that a materially adverse change

in employment has occurred: " . . . a termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation."

Galabya, 202 F.3d at 640 (internal quotations and citations omitted).  Because there is no

definitive test to determine whether an action constitutes an adverse employment action, courts

must analyze the facts and circumstances in each individual case.  See Wannamaker, 108 F.3d at

466.

 Additionally, in order to establish the causal nexus element of a retaliation claim, a

plaintiff must show that his or her participation in the protected activity and the occurrence of

the adverse action are "very close" in time.  See Clark County Sch. Dist. v. Breeden, 532 U.S.

268, 273-74 (2001)(citing cases standing for the proposition that three months between

participation in a protected activity and an adverse employment action is too long to satisfy the

close temporal proximity requirement).  See also Richardson, 180 F.3d at 447 (noting that a two

year period of time is too attenuated to satisfy causality); Quinn v. Green Tree Credit Corp., 159

F.3d 759, 769 (2d Cir. 1998)(indicating that allegedly retaliatory action within a two month

period of time is sufficient to establish the requisite causal nexus).

 Each of Plaintiff's retaliation claims will be analyzed separately pursuant to the above

analysis:

   a. Refusal to assign Plaintiff daily duties

 Plaintiff claims that the first act of retaliation taken by Defendant after Plaintiff filed his

age discrimination complaint with the EEOC was the refusal by his supervisor to assign Plaintiff

any "duties for the day" on April, 1, 2005.  Ex. A at ¶8F; Pl's Aff. at ¶65.  This happened two

days after Plaintiff filed his complaint with the EEOC on March 30, 2005.  Pl's Aff. at ¶64.

Plaintiff alleges that this was a common way for management to show their displeasure with

certain employees.  Pl's Aff. at ¶65.  Defendant erroneously asserts that Plaintiff has not

previously put forth this allegation and that he cannot do so now in his Affirmation in

Opposition to Defendant's Motion for Summary Judgment.  Def's Reply Mem. at 7.

Defendant's contention that this claim was not alleged in the Complaint is false.  Plaintiff

states in  ¶8F of the Complaint (Ex. A) that "[i]nitial retaliation involved the failure of foremen

to assign me daily duties, a departmental practice used to register management displeasure with

an employee out of favor."  Even though Defendant's argument is unsubstantiated, Plaintiff still

fails to prove that this act by his employer was an adverse employment action that constituted a

"materially adverse change in the terms and conditions of employment."   <u>Galabya</u>, 202 F.3d at

640.

It has already been established that "[i]n his position as a part-time laborer, Plaintiff is

assigned duties by his supervisor on an as needed basis based upon the needs of the Town. . . ."

Def's 56.1 Statement at  ¶¶135, 136; Ex. C at 42-43, 229.  Plaintiff testified at his deposition,

"[M]y understanding, basically, is that as a laborer I was required to do as instructed.  You

know, if they told me to clean every toilet in Mount Pleasant, if I wanted to keep the job, then I

had better get a toilet brush and get to work.  I did as I was told."  Ex. C at 42-43.  When

Plaintiff was later asked at his deposition what his primary duties were, he replied, "It depends

on what needs to be done."  Ex. C at 229.

Plaintiff admitted that as of March 7, 2005, "the Water Department was the [sic] highest

staffing levels since I started working there."  Pl's Aff. at ¶62.  Under these circumstances it

cannot be concluded that the failure of the Department to assign duties to Plaintiff on April 1,

2005, was in any way retaliatory.  This happened again, on three other days, illustrating the fact

that this was not a one-time, retaliatory incident but merely the standard practice of assigning

jobs in the Water Department according to departmental needs.  Pl's Aff. at ¶¶66, 67, 90.

Plaintiff also acknowledges that he was not a member of the union and was therefore not

afforded any protection regarding job assignments or work hours.  Pl's Aff. at ¶99.  Plaintiff

alleges no other facts besides the dates of these incidents and his assertion that the refusal to

assign him duties was retaliatory.  Based on this evidence alone, Plaintiff has not established that

this was an adverse employment action and this part of his retaliation claim must be dismissed.

> b.    Exclusion from working overtime

Plaintiff asserts that another retaliatory action by management was that they excluded

him from working overtime.   Ex. A at ¶8F; Pl's Aff. at ¶114.  Defendant counters that Plaintiff

did work overtime after he filed his EEOC complaint and that, in the alternative, Plaintiff's

excessive absenteeism prevented him from being available when overtime presented itself.  Def.

Mem. at 14-18; Ex. D.  Defendant also states that the Water Department is at full staffing levels,

as opposed to when Plaintiff was first hired as a seasonal worker, when it was understaffed, so

there is no need to assign Plaintiff overtime.  Id. at 17.  Defendant further erroneously claims

that, "pursuant to the collective bargaining agreement between the union and the Town, the

Town is required to give the full-time union employees overtime before it can give overtime to

the non-union members."  Id. at 18.  Although this may be a practice that is understood and

accepted by management and employees, it is not an agreement that has been reduced to writing

in the collective bargaining agreement, as Defendant claims; thus, this argument is invalid.  See

generally Ex. G at 13-14.

Plaintiff's claim that he was denied overtime after filing his EEOC complaint is refuted

by his own documentary evidence.  In Plaintiff's exhibits, he provides departmental records that

show he worked overtime on May, 16, 2005; May 17, 2005; during the pay period ending May

27, 2005; and July 8, 2005.  Pl's Exs. 34B-E.  All of these overtime assignments occurred *after*

Plaintiff filed his EEOC complaint on March 30, 2005.  Additionally, by Plaintiff's own

admission, the Water Department was fully staffed after March 7, 2005.  Pl's Aff. at ¶63.  When

Plaintiff was first hired as a seasonal laborer and presumably incurred overtime,[8] the Water

Department was down four full-time staff members.   Def's 56.1 Statement at ¶25.  Because of

the short staffing at that time, Plaintiff was given more work than a seasonal or part-time laborer

would normally receive.  Def's 56.1 Statement at ¶¶29, 30.  It is a legitimate assertion by

Defendant that once staffing increased to its normal level, Plaintiff's duties were reduced and it

was no longer necessary to assign Plaintiff overtime.  Def's Mem. at 17.  This is a legitimate,

non-retaliatory reason for the reduction in overtime hours.

Defendant also asserts that Plaintiff is not available to work overtime due to his excessive

absenteeism.   Mem. at 14-18; Ex. D.  Plaintiff admits that he is absent from the job often in

order to pursue the instant lawsuit.  Pl's Aff. at  ¶¶98, 99.  It is a legitimate, non-retaliatory

business decision by the Town to allot overtime to those employees who are present and

regularly report for work.

Furthermore, Plaintiff's claim is temporally deficient.  As stated previously, a plaintiff

must show that his or her participation in the protected activity and the occurrence of the adverse

action are "very close" in time.  Clark County School District, 532 U.S. at 273-74.  In Clark

County School District, the Supreme Court listed cases that held that even three or four months

---

[8]Plaintiff provides only one instance of working overtime prior to the filing of his EEOC complaint: a letter to the Town seeking documentation that he worked overtime on September 11, 2004.  The Town was never able to locate any record of this overtime.  Nonetheless, viewing the evidence in a light most favorable to Plaintiff, and since Defendant does not appear to contest the fact that Plaintiff worked overtime before the filing of his EEOC complaint, this Court will accept that fact as true.  Even under this assumption, Plaintiff's claim still fails.

time in between the protected activity and the allegedly adverse action was too long to satisfy the causal connection requirement.  Id.  Here, Plaintiff's last documented overtime was in July of 2005.  Pl's Ex. 34E.  Even assuming that Plaintiff's claim of refusal of overtime qualified as an adverse employment action, such an action by Defendant did not occur until the end of July, at the earliest.  Plaintiff filed his EEOC complaint on March 30, 2005.  Thus, it was almost four months between the protected activity and the allegedly adverse action.  According to Clark County School District, this is too much time to causally connect the two and Plaintiff's claim regarding overtime must be dismissed.

c.     Exclusion from working with others

Plaintiff claims that Defendant retaliated against him by refusing to allow Plaintiff to work with other members of the Water Department staff.  Ex. A at ¶8F; Pl's Aff. at  ¶95A-G. Plaintiff claims that he was assigned solitary duties such as washing cars and cutting grass that were meant to be disciplinary.  Id.  Defendant maintains that these do not qualify as adverse employment actions and that the Town had legitimate, non-retaliatory reasons for assigning Plaintiff these tasks.  Def. Mem. at 13-15, 17.

For an action to qualify as an adverse employment action, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Galabya, 202 F.3d at 640 (internal citations omitted).  The alleged adverse employment action must have a material impact on the terms and conditions of employment.  Richardson, 180 F.3d at 446.  "[R]eceiving unfavorable schedules or work assignments. . . [does] not rise to the level of [an] adverse employment action[].  Smalls v. Allstate Insurance Company, 396 F. Supp. 2d 364, 371 (S.D.N.Y. Oct. 10, 2005).

Plaintiff's claim that he was ordered to work alone, doing labor that he considered

21

"punitive," is not sufficient to satisfy the requirements of an adverse employment action.

Plaintiff admits that all of the jobs he was assigned were "within the scope of [his] duties as a

Laborer."   Pl's Aff. at  ¶95F.  Thus, he was not being asked to do work that was not expected of

him or that was not contained within the job description of Laborer.  Ex. V; App. A.  Therefore,

such assignments can not be deemed adverse employment actions as they do not have a material

impact on the *terms and conditions of employment*.

　　　Additionally, it has been established that Plaintiff is assigned duties by his supervisor on

an as needed basis based upon the needs of the Town and Plaintiff's experience and

qualifications.  Def's 56.1 Statement at  ¶¶135, 136; Ex. C at 42-43, 229.   In fact, Plaintiff

testified in his deposition that he "was required to do as instructed" and that he "did as [he] was

told."  Ex. C at 42-43.  Because Plaintiff has submitted no evidence beyond his own assertion

that being assigned to work alone was punitive and because the work he was assigned was within

the scope of his job duties, such actions by Defendant are legitimate, non-retaliatory business

decisions.  Plaintiff's retaliation claim in this regard must be dismissed.

　　　　　　　d.　　Refusal to assign Plaintiff a locker

　　　Plaintiff claims that another form of retaliation that he suffered at the hands of Defendant

was Defendant's refusal to assign Plaintiff a locker.  Ex. A at ¶8F.  Defendant responds that this

does not rise to the level of an adverse employment action.  Def. Mem. at 15, 18.

　　　As previously stated, to qualify as an adverse employment action, the act must have a

material impact on the terms and conditions of employment.  Richardson, 180 F.3d at 446.

Plaintiff not being assigned a locker does not have a material impact on his terms and conditions

of employment.  Although Plaintiff might find it inconvenient to not have a locker at work, "a

mere inconvenience" does not rise to the level of an adverse employment action.  Galabya, 202

22

F.3d at 640 (internal citations omitted).   Plaintiff's retaliation claim in this regard must be dismissed.

## III.   <u>CONCLUSION</u>

For the aforementioned reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion for summary judgment should be granted and Plaintiff's claims should be dismissed in their entirety.

## IV.   <u>NOTICE</u>

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: September 15, 2010
       White Plains, New York

                                        Respectfully Submitted,

                                        Lisa Margaret Smith
                                        Chief United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Cathy Seibel, USDJ
300 Quarrapos Street
White Plains, New York 10601

Robert Wolff
62-55 Broadway
Bronx, New York 10471

Steven Stern
Sokoloff Stern LLP
355 Post Avenue, Suite 201
Westbury, New York 11590